# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**STATE OF LOUISIANA**                                          **CIVIL ACTION**

**VERSUS**                                                      **NO. 15-274-JWD-RLB**

**ASTRAZENECA AB, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT**

Signed in Baton Rouge, Louisiana, on September 11, 2015.

_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA                                        CIVIL ACTION

VERSUS                                                    NO. 15-274-JWD-RLB

ASTRAZENECA AB, ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before on Plaintiff's Motion to Remand.  (R. Doc. 9).  The motion is

opposed.  (R. Doc. 16).  Defendants moved for oral argument (R. Doc. 17), which the

undersigned denied as unnecessary for the purpose of issuing this Report and Recommendation.

(R. Doc. 18).  After careful review of the pleadings, arguments of the parties, and applicable law,

it is the recommendation of the magistrate judge that the Plaintiff's Motion to Remand be

GRANTED, and the action REMANDED to the 19th Judicial District Court, Baton Rouge,

Louisiana.

I.      Background

On March 18, 2015, the State of Louisiana, through its Attorney General, (the "State" or

"Plaintiff") filed a *parens patriae* action against defendants AstraZeneca AB, AstraZeneca LP,

AstraZeneca Pharmaceuticals LP, and Aktibolaget Hässle (collectively, "AstraZeneca" or

"Defendants") in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.  (R. Doc.

1-2, "Petition").  The action concerns patents governing Toprol-XL, a prescription drug

manufactured by AstraZeneca and approved by the United States Food and Drug Administration

("FDA") for the treatment of angina, hypertension, and congestive heart failure.  (Petition, ¶ 3).

1

The State alleges that AstraZeneca obtained U.S. Patent 5,001,61 (the "161 patent") and U.S. Patent 5,081,154 (the "154 patent"), which govern the use of metoprolol succinate in Toprol-XL, through "inequitable conduct" before the U.S. Patent and Trademark Office ("PTO"). (Petition, ¶ 5).  The State alleges that the 161 and 154 patents contain claims regarding metoprolol succinate that were "obvious" from an earlier filed patent (the "318 patent"). (Petition, ¶ 2).  The State alleges that in the absence of AstraZeneca's inequitable conduct, the PTO would not have issued the 161 and 154 patents. (Petition, ¶ 5, 82-86).  The State further alleges that AstraZeneca improperly caused these patents to be listed in the FDA publication titled "Approved Drug Products With Therapeutic Equivalence Evaluation" (the "Orange Book"), which led the State to reimburse purchases of Toprol-XL through its Medicare program. (Petition, ¶¶ 5, 29, 54-59).  Finally, the State alleges that AstraZeneca filed "baseless patent infringements actions" against generic manufacturers to maintain its monopoly over metoprolol succinate despite having known or should have known that the patents were unenforceable. (Petition, ¶¶ 9-11, 136-147).[1]

In light of the foregoing allegations, the State brought this enforcement action pursuant to the Louisiana Monopolies Act, La. R.S. §§ 51:121, *et seq*., the Louisiana Unfair Trade Practices Act, La. R.S. §§ 51:1401, *et seq*, and, in the alternative, unjust enrichment. (Petition, ¶¶ 15, 157-179).  The State alleges that as a result of AstraZeneca's actions, including allegedly frivolous patent infringement litigation that allowed AstraZeneca to retain a monopoly over metoprolol succinate for at least 30 months longer than it should have, the State has lost millions of dollars by being forced to purchase the brand product (Troprol XL) at a higher rate than generic

---

[1] The alleged sham patent infringement litigation was brought against generic drug manufactures in federal court pursuant to the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271(e)) (the "Hatch-Waxman Amendments").

products would have sold for.  (Petition, ¶¶ 8, 13, 14, 64, 65, 154).  The State seeks restitution

and to recover treble damages, as well as attorney fees and costs. (Petition, ¶ 181.)

On April 28, 2015, AstraZeneca removed the case alleging that the court has subject

matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, and the patent

jurisdiction statute, 28 U.S.C. § 1338. (R. Doc. 1).  AstraZeneca alleges the state law claims in

the Petition raise substantial and disputed issues of patent law, which provides jurisdiction

pursuant to § 1331 and § 1338 pursuant to the doctrines announced in *Grable & Sons Metal*

*Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (R. Doc. 1 at 4-5).

On May 29, 2015, the State moved to remand the action on the basis that the court does

not have subject-matter jurisdiction over its claims, which are all expressly brought pursuant to

state law. (R. Doc. 9).

## II.      Arguments of the Parties

The State argues that under both § 1331 and § 1338, the court must look to whether a

federal cause of action is pled in the state court pleading. (R. Doc. 9-1 at 8-12).  The State argues

that to the extent an issue of patent law is necessarily raised by its antitrust and deceptive trade

practices claims, the invalidity of the patents at issue is not in dispute, as that issue has been

resolved by other courts. (R. Doc. 9-1 at 11-12).  The State further argues that its claims do not

fit in the narrow and rare circumstances in which a federal court can exercise jurisdiction in the

absence of an alleged federal claim. (R. Doc. 9-1 at 12-17).  The State references two federal

court decisions in support of the specific proposition that this court cannot exercise jurisdiction

over a *parens patriae* action brought against a pharmaceutical manufacturer under state antitrust

and consumer protection laws on the basis that the manufactures commenced frivolous patent

infringement litigation.  (R. Doc. 9-1 at 14-16).  The State also argues that to the extent the

3

Defendants raise federal defenses to its state-law claims, the well-pleaded complaint rule

prevents removal.  (R. Doc. 9-1 at 18-19).  Finally, the State argues that failing to remand the

action would upset the balance between state court and federal court jurisdiction. (R. Doc. 9-1 at

19-20).

As in their Notice of Removal, AstraZeneca states that the court has subject matter

jurisdiction over this action pursuant to § 1331 and § 1338.  (R. Doc. 16 at 3).  AstraZeneca

argues that the resolution of the alleged state law claims necessarily depends upon the resolution

of the "federal patent law question of inequitable conduct."  (R. Doc. 16 at 4-6).  AstraZeneca

asserts that the "inequitable conduct" alleged by the State in the Petition was vacated by the

Federal Circuit in 2007 (R. Doc. 16 at 5), and the Federal Circuit has since heightened the

standard for proving inequitable conduct.  (R. Doc. 16 at 5).  Accordingly, AstaZeneca argues

that based on the allegations in the Petition regarding its alleged inequitable conduct, issues of

federal law are "necessarily raised" and "actually disputed."  (R. Doc. 16 at 6-7).  AstaZeneca

then argues that the States' claims involve a "substantial" dispute over federal law in light of the

following factors:  (1) whether the federal question involves federal agency; (2) the importance

of the federal question; (3) whether the action will resolve the federal question; and (4) whether a

decision as to the federal question will control subsequent decisions.  (R. Doc. 16 at 7-10).

Finally, AstraZeneca argues that the resolution of Plaintiff's claims will not disrupt the federal-

state balance and, to the contrary, the exercise of federal jurisdiction is proper because the action

concerns the determination of inequitable conduct pursuant to federal patent law. (R. Doc. 16 at

10-11).

### III.     Law and Analysis

#### A.     Legal Standards

This court has original subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Nevertheless, because federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re Hot–Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's "well-pleaded complaint" as of the time of removal. *See Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). Because the plaintiff is the master of his complaint, even where both federal and state remedies are available on a given set of facts, there will be no basis for removal on federal question jurisdiction if the plaintiff elects in the state court petition to proceed exclusively under state law. *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). That federal law may provide a defense to a state law claim is insufficient to establish federal question jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328-29 (5th Cir. 2008).

Federal question jurisdiction is generally invoked by the plaintiff pleading a cause of action created by federal law. The Supreme Court has held, however, that federal question

jurisdiction may also exist over state law claims that implicate significant and disputed federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (quiet title action by former landowner brought in state court against tax sale purchaser presented a removable federal question because the plaintiff alleged the IRS failed to give him independent notice of the sale as required by federal law).  A federal issue is embedded in a state law cause of action, and will confer federal question jurisdiction under 28 U.S.C. § 1331, "where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314).

The Supreme Court has limited the scope of federal question jurisdiction of the type discussed in *Grable* to only a "slim category" of cases.  For example, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the health insurance carrier for federal employees sued to recover health insurance benefits it had paid to a former enrollee because the enrollee had recovered damages for his injuries in a state court action.  The insurer's claim arose under state contract law, but the insurer asserted that because the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, the FEHBA was a necessary element of the insurer's claim. The Supreme Court concluded that this action did not "fit within the special and small category" of cases described in *Grable*. *Id.* at 699.  The court distinguished *Grable* on two primary grounds.  First, the dispute in *Grable* centered on action by a federal agency (the IRS) and whether that action was compatible with a federal statute. *Id*. at 700.  In contrast, the dispute in *Empire* centered on action by non-government persons and entities.  *Id*.  Second, *Grable*

6

"presented a nearly pure issue of law, one that could be settled once and for all and thereafter

would govern numerous tax cases." *Id*.  In contrast, the reimbursement claim in *Empire* was

"fact-bound and situation-specific." *Id*. at 701.  Accordingly, the Court found that the state court

was competent to apply federal law to the extent necessary to resolve the amount of the insurer's

state law reimbursement claim.  *Id*.

Under 28 U.S.C. § 1338(a), this court has original and exclusive subject-matter

jurisdiction "of any civil action arising under any Act of Congress relating to patents."   While

federal courts have exclusive jurisdiction over all cases arising under the patent laws, they do not

have exclusive jurisdiction over "all questions in which a patent may be the subject-matter of the

controversy." *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478 (1912); *see*

*also New York by Lefkowitz v. Transcience Corp.*, 362 F. Supp. 922, 925 (S.D.N.Y. 1973)

("[T]he State Courts do have jurisdiction to determine questions arising under the patent laws,

when merely incidental to cases which do not arise under that law.").  Exclusive federal patent

jurisdiction "extend[s] only to those cases in which a well-pleaded complaint establishes either

that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal patent law, in that patent law is a

necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating*

*Corp.*, 108 S. Ct. 2166, 2173-74 (1988).  "The Supreme Court [has] grafted § 1331 precedent

onto its § 1338 analysis and equated the statutory 'arising under' standard under § 1338 for

patent cases with that established for claims invoking federal question under § 1331." *Lab. Corp.*

*of Am. Holdings v. Metabolite Labs., Inc.*, 599 F. 3d 1277, 1282 (Fed. Cir. 2010) (citing

*Christianson*, 108 S. Ct. at 2174).  Accordingly, the Supreme Court applies the four-part test

announced in *Grable* to determine whether the court can exercise § 1338 jurisdiction over state

7

law claims.  *See Gunn v. Minton*, 133 S. Ct. 1059 (2013) (legal malpractice suit involving the

improper handling of a patent case did not provide a federal court with patent jurisdiction).

> **B.       Federal Jurisdiction Analysis**

The court now turns to whether it has subject matter jurisdiction over the States' claims

pursuant to the federal question statute, 28 U.S.C. § 1331, and the patent jurisdiction statute, 28

U.S.C. § 1338.  As the Petition facially raises only state law claims, the court may only exercise

federal jurisdiction pursuant to § 1331 or § 1338 "if a federal issue is: (1) necessarily raised, (2)

actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting

the federal-state balance approved by Congress."  *Gunn*, 133 S. Ct. at 1065 (citing *Grable*, 545

U.S. at 313-14).

The first and second elements of *Grable*'s four-part inquiry are satisfied.  The State does

not appear to dispute that at least some of the claims allegedly in the Petition necessarily raise

issues of federal law.[2]  The State claims that the 161 and 154 patents were improperly obtained

through inequitable conduct before the PTO. (*See* Petition, ¶¶ 105-109).  The State also argues

that the 161 and 154 patents are invalid based on the "doctrine of non-statutory double

patenting" and that the 161 patent is invalid pursuant to 35 U.S.C. § 102(b). (*See* Petition, ¶¶

110-125).  The State also alleges that AstraZeneca improperly listed the 161 and 154 patents in

the Orange Book despite knowing they were invalid.  (*See* Petition, ¶¶ 130-135).  Finally,

resolution of the State's claims that AstraZeneca engaged in sham patent infringement litigation

(*see* Petition ¶¶ 136-147) will necessarily require consideration of whether the 161 and 154

patents are valid and/or enforceable.[3]  There is clearly a dispute regarding whether the 161 and

---

[2] The State does not specifically concede that federal law is "necessarily raised" by its claims.  The State's arguments are premised, however, on a finding that "an issue of patent law is necessarily raised by the State's antitrust and deceptive trade practices claims." (R. Doc. 16 at 6).

[3] For the State to demonstrate that AstraZeneca prosecuted sham patent infringement litigation, it must

154 patents are valid and/or enforceable, and the extent to which previous decisions control whether those patents are valid and/or enforceable.

The primary disagreement between the parties is whether the disputed issues of federal and patent law are sufficiently "substantial" to meet the third element of *Grable*'s four-part inquiry. The Supreme Court has stated that "for a case to be substantial in the relevant sense, it is not enough that the federal issue be significant to the particular parties in the immediate suit" and the substantiality inquiry "looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066. The Supreme Court has not provided an exhaustive list of factors for determining whether a federal issue is substantial. The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 n. 12 (1986). The Eastern District of Louisiana has looked to the following factors in determining whether the substantiality requirement is of the *Grable* four-part inquiry is satisfied: (1) the importance of the federal questions at stake; (2) whether the resolution of the federal questions affects only the parties; (3) whether there is an express challenge or a specific action of a federal agency or a collateral attack on a regulatory scheme; and (4) whether nearly pure issues of law are at issue. *Bd. of Comm'rs of the Se. Louisiana Flood Prot. Authority-East v. Tennessee Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 859-63 (E.D. La. 2014) (finding federal question jurisdiction over removed state court action where state flood control agency alleged that oil and gas operations of 92 companies caused erosion of coastal lands that resulted in increased flood risks from storm surges).

---

prove that the lawsuit was "objectively meritless," that is, "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

The State highlights two decisions in support of a finding that any federal issues raised by its state law claims are not substantial—*West Virginia ex rel. Morrisey v. Pfizer, Inc*., 969 F. Supp. 2d 476 (S.D. W. Va. 2013) and *Vermont v. MPHJ Tech. Invs., LLC*, No. 13-170, 2014 WL 1494009 (D. Vt. Apr. 14, 2014).  Both of these decisions were decided after *Grable* (in 2005) announced its four-part test applicable to determining federal question jurisdiction pursuant to § 1331, and after *Gunn* (in 2013) expanded that four-part test to apply to § 1338.[4]

In *Pfizer*, the West Virginia attorney general brought a *parens patriae* action alleging that a drug manufacturer violated state antitrust and consumer protection laws, among other acts, by (1) fraudulently obtaining a duplicative patent from the PTO and wrongfully listing that patent in the FDA's Orange Book; and (2) engaging in sham patent infringement litigation against a generic manufacturer.  *Pfizer*, 969 F. Supp. 2d at 479-481.  After finding that federal laws were necessarily raised and disputed by these theories of recovery, the court turned to whether the disagreed upon patent issue was sufficiently "substantial" to meet the third *Grable* requirement. *Id*. at 484-85.  The court concluded that the questions of patent law raised in the plaintiff's claims regarding the alleged defrauding of the PTO "strongly resembles the hypothetical nature of the legal malpractice inquire in *Gunn*."  *Id*. (citing *Gunn*, at 133 S. Ct. at 1067).  The court found the inquiry into whether the PTO would have issued the patent had it known all the facts as "highly factual" and narrowly focused "on what [the defendant] knew regarding the subject of its subsequent patent and whether it fully disclosed those facts in its patent application."  *Id*. at

---

[4] The State also relies on decisions decided prior to *Grable* and *Gunn* that looked to whether the plaintiffs' allegations raised a substantial, disputed question of federal law that was necessary to resolve the state law claim.  *See Altman v. Bayer Corp.*, 125 F. Supp. 2d 666, 673-75 (S.D.N.Y. 2000) (no federal 1338 jurisdiction where plaintiff alleged sham patent litigation by defendants); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1053-54 (D. Kan. 1999) (no federal jurisdiction were plaintiffs alleged unfair competition and sham patent litigation by defendants); *In Re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 837-38 (E.D. Mich. 1999) (no federal jurisdiction where plaintiff alleged sham patent litigation by defendants).

485. The court concluded that the decision in the state court would not affect the validity of the

underlying patent itself and would not control numerous other cases. *Id*. (citing *Jacobs Wind*

*Elec. Co., Inc. v. Fla. Dep't of Transp.*, 919 F.2d 726, 728 (Fed. Cir. 1990)).  In the absence of

any claims that the PTO violates its regulations or procedures (which would arguably raise a

substantial issue of federal law to be resolved by federal courts) the court concluded that the

disputed issue of federal law "is highly factual and a state court's resolution of any federal issues

here would be of little consequence to later litigants in other actions." *Id*.  In short, the plaintiff's

claims under these two theories of recovery (wrongful conduct before the PTO and FDA and

sham parent infringement litigation) did "not require resolution of a *substantial* issue of federal

law" and the plaintiff's claims "therefore do not arise under federal law."[5]

Similarly, in *MPHJ Tech. Invs.*, the Vermont attorney general brought a claim against a

patent holder under the state consumer protection act where the defendant allegedly sent

deceptive letters to small businesses threatening them with patent infringement lawsuits. *MPHJ*

*Tech. Invs.*, No. 13-170, 2014 WL 1494009 (D. Vt. Apr. 14, 2014).  The court remanded the

---

[5] The *Pfizer* court analyzed two additional theories of recovery, namely (3) that Pfizer filed a sham citizen petition with the FDA regarding a generic drug and (4) that Pfizer entered into an anticompetitive market allocation agreement. *Pfizer*, 969 F. Supp. 2d at 483.  The court found that even if the two previous theories of recovery had raised "substantial" patent law issues, the latter theories of recovery did not implicate the issuance or validity of patents at all. *Id*. at 486-89.  The court could not exercise jurisdiction regardless of whether the first two theories of recovery raised "substantial" patent law issues because "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories. *Id*. at 483 (quoting *Christianson*, 486 U.S. at 810). In an effort to discredit the *Pfizer* holding, AstraZeneca argues that "it is aware of only one court that has considered the applicability of *Pfizer* to the removal of antitrust cases, *and that court rejected its reasoning*." (R. Doc. 16 at 9) (emphasis in original).  The decision mentioned by Astrazeneca is a transcribed ruling from the bench attached to a declaration in support of a Notice of Motion for Certification. *See In re Lipitor Antitrust Litig.*, No. 12-cv-2389, ECF No. 540-1 (D.N.J. Mar. 17, 2014) (attached at R. Doc. 16-2).  That decision distinguished the *Pfizer* decision by holding that "patent law is essential" to all the claims before it, and, presumably, all the theories in support of those claims. *See id*. at 13-14.  That decision further found that exercising jurisdiction was appropriate based on the application of the "rule of reason" to reverse payment settlements in patent infringement litigation as discussed in *F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013). *See id*. at 14.

action on the basis that "federal question jurisdiction cannot be established under *Gunn* because,

on the face of the State's well-pleaded complaint, patent law issues are not 'necessarily raised'

nor are they sufficiently 'substantial' to support a finding of federal jurisdiction." *Id.* at *4.

Concluding that the case was "about consumer protection, not about patents," the court stated

that even if federal patent issues were necessarily raised, those issues "involve the application of

existing patent law to the facts of this case, and require no determination of patent law that would

have implications reaching beyond the parties to this proceeding."  *Id.* at *6.

The court finds the foregoing decisions persuasive.  Here, the state has alleged virtually

the same types of allegations—that AstraZeneca improperly obtained patents from the PTO,

listed those improper patents in the Orange Book, and engaged in "sham" litigation to extent its

wrongfully obtained monopoly over those patents.  These allegations require a fact-intensive

inquiry and do not raise nearly pure questions of law.  While the State's claims necessarily raise

disputed issues of federal law regarding the validity and/or enforceability of the patents, the court

considering the State's claims will have to engage in a fact-specific inquiry into the alleged acts

and omissions of AstraZeneca before the PTO and FDA.[6]  Whether AstraZeneca violated the

Louisiana Monopolies Act or the Louisiana Unfair Trade Practices Act will have little, if any,

bearing outside of the immediate suit.  *See Gunn*, 133 S. Ct. at 1066; *Pfizer*, 969 F. Supp. 2d at

485; *MPHJ Tech. Invs.*, 2014 WL 1494009, at *11.

Throughout its briefing, AstraZeneca attempts to characterize the only necessary and

disputed issues of federal law as the issue of whether AstraZeneca engaged in "inequitable

conduct" sufficient to render the 161 and 154 patents unenforceable.  The Federal Circuit

decision relied upon by AstraZeneca does not preclude a finding that AstraZeneca's conduct was

---

[6] Much of this analysis will focus on what the defendant knew regarding the subject of its subsequent patents and whether those facts were fully disclosed.

inequitable. *See In re Metroprolol Succinate Patent Litig.*, 494 F.3d 1011 (Fed. Cir. 2007)

(affirming the district court's "invalidity" holding regarding the 154 patent, but vacating its

"inequitable conduct unenforceability" holding regarding the 161 and 154 patents and remanding

the action to the district court because factual issues precluded a finding of summary judgment).

Furthermore, regardless of what a state court may find regarding the enforceability and/or

validity of the patents at issue, "a state court is without power to invalidate an issued patent."

*Jacobs Wind Elec. Co., Inc.*, 919 F.2d at 728.  Any decision by the state court regarding

AstraZeneca's conduct in obtaining the patents at issue, having those patents listed in the Orange

Book, or engaging in the alleged "sham" litigation will not overrule any decision by the Federal

Circuit regarding AstraZeneca.

AstraZeneca has not demonstrated, and the court does not find, that resolution of the

State's claims on the merits are controlled by the Federal Circuit's vacatur and remand of the

issue of inequitable conduct.  While resolution of the State's claims will require some inquiry

into the validity and/or enforceability of the 161 and 154 patents, the merit of the State's claims

will ultimately rest upon whether AstraZeneca's acts or omissions violated the Louisiana

Monopolies Act[7] or the Louisiana Unfair Trade Practices Act,[8] or whether the State is entitled to

unjust enrichment.[9]

---

[7] The Louisiana Monopolies Act provides that "No person shall monopolize, or attempt to monopolize, or combine with any other person to monopolize any part of the trade or commerce within this state." La. R.S. § 51:123.  "In order to establish a cause of action for monopoly, the pleadings must state facts sufficient to show that defendant (1) possessed monopoly power in a clearly defined economic and geographic market (the relevant market) and, (2) that defendant had the specific purpose or intent to exercise or maintain that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *See Abraham v. Richland Parish Hosp. Service Dist. 1–B*, 938 So. 2d 1163, 1169 (La. App. 2nd Cir. 2006).
[8] The Louisiana Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405.  To establish a LUPTA claim, "a plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 144 So. 3d

In sum, the court finds that it cannot exercise federal jurisdiction pursuant to either to §

1331 or § 1338 because any necessarily raised and disputed questions of federal law are not

substantial.  Having concluded that there are no substantial issues of federal law sufficient to find

jurisdiction, the court need not engage in further analysis of whether finding federal question

jurisdiction would disrupt the balance of federal and state judicial responsibilities.

## IV.     Conclusion

While the validity and/or enforceability of the 161 and 154 patents are necessary and

disputed aspects of the alleged state law claims, AstraZeneca has failed to establish that any

federal issues are substantial.  Accordingly, the court does not have subject matter jurisdiction

pursuant to either 28 U.S.C. § 1331 or 28 U.S.C. § 1338.

### RECOMMENDATION

For the foregoing reasons, it is the recommendation of the magistrate judge that the

Motion to Remand should be **GRANTED**, and that the instant action should be **REMANDED** to

the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on September 11, 2015.


_____

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

1011, 1025 (La. 2014) (quoting *Cheramie Services, Inc. v. Shell Deepwater Prod.,* 35 So.3d 1053, 1059
(La. 2010)September 11, 2015.
[9] To be entitled to unjust enrichment claim under Louisiana law, a plaintiff must demonstrate: (1)
enrichment, (2) impoverishment, (3) a connection between the enrichment and resulting impoverishment,
(4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) that there is
no other remedy at law available to plaintiff.  La. C.C. Art. 2298; *Baker v. MacLay Properties Co.*, 648
So. 2d 888, 897 (La. 1995).